**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

PAMELA DELAP, RONALD DELAP,

                              Plaintiffs,

         v.                                              1:21-CV-0847
                                                          (LEK/CFH)

JUDGE MICHAEL MACKEY, et al.

                              Defendants.

---

**APPEARANCES:**

Pamela Delap
13 Sand Spurry Road
Ballston Spa, New York 12020
Plaintiff pro se

Ronald Delap
13 Sand Spurry Road
Ballston Spa, New York 12020
Plaintiff pro se

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION & ORDER

#### I.  In Forma Pauperis

         Plaintiffs pro se Pamela Delap and Ronald Delap purported to commence this

action on July 28, 2021, with the filing of a complaint and motion for leave to proceed in

forma pauperis ("IFP").  See Dkt. No. 1 ("Compl."), Dkt. No. 2.  Plaintiffs also filed a

motion for appointment of counsel.  See Dkt. No. 3.  The Court has reviewed plaintiffs'

IFP application and determines that plaintiffs financially qualify to proceed IFP for

purposes of filing.  Plaintiffs are advised that they are still required to pay for any costs

or fees they may incur in this matter. As the Court has granted plaintiffs' IFP

application, the Court must next complete review of plaintiffs' complaint pursuant to 28

U.S.C. § 1915 to determine whether the complaint may proceed.

## II.  Initial Review

### A. Legal Standards

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff

seeks to proceed IFP, "the court shall dismiss the case at any time if the court

determines that  . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a

claim on which relief may be granted; or (iii) seeks monetary relief against a defendant

who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility

to determine that a plaintiff may properly maintain his complaint before permitting him to

proceed with his action. Where the plaintiff is proceeding pro se, the court must

consider the claims "liberally" and "interpret them 'to raise the strongest arguments that

they suggest.'" Cold Stone Creamery, Inc. v. Gorman, 361 F. App'x 282, 286 (2d Cir.

2010) (summary order) (quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)).

"[T]he tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). A pro se

litigant's pleadings are held to a less strict standard than those drafted by an attorney.

See Fed. Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008) ("Even in the formal

litigation context, pro se litigants are held to a lesser pleading standard than other

parties."). Because plaintiff is proceeding pro se, the Court construes his pleadings "to raise the strongest arguments that they suggest." See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). However, this "does not exempt a [pro se litigant] from compliance with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983).

Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction . . . ;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought . . . .

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d).

Further, Rule 10 of the Federal Rules provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with these pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

### B.  Complaint

First, plaintiffs' complaint fails to meet the requirements of Fed. R. Civ. P. 10.  Plaintiffs' complaint is not organized in numbered paragraphs, limited to a single set of circumstances per paragraph.  See FED. R. CIV. P. 10.  Instead, plaintiffs' complaint consists of 12, single-spaced typed pages, and, at times, is difficult to follow.  See generally Compl.  Second, plaintiffs' complaint also fails to comply with Fed. R. Civ. P. 8 because it does not provide a short and plain statement of the Court's jurisdiction nor a short and plain statement showing how plaintiffs are entitled to relief.  See FED. R. CIV. P. 8. Ultimately, it appears that plaintiffs contend that unspecified civil rights were violated in connection to legal representation and court proceedings relating to an underlying medical malpractice claim arising out of Ms. Delap's 2014 dental injury..  The undersigned has reviewed the complaint carefully, and sets forth the description of the plaintiffs' alleged facts and claims to the best of its understanding.

At some point, plaintiffs retained defendant attorney Jordan Pine to represent them with respect to their medical malpractice claim against defendants Aspen Dental Management, Aspen Dental of Upper Hudson Valley, and defendant Michaela Serseloudi, DDS (collectively "Aspen defendants" where appropriate), relating to a 2014 root canal procedure that allegedly caused Ms. Delap serious injury.  See generally Compl.  Defendant Zachary Mattison represented the Aspen defendants.  See id. Caitlin Insurance Company appears to be the insurer for the Aspen defendants. See id. David Cabaniss is the attorney who represented Mr. Pine in an apparent lawsuit he commenced against plaintiffs relating to a payment dispute.  See id.  Plaintiff's medical malpractice claim was assigned to Albany County Supreme Court Judge Gerald

Connolly.  See id. at 1.  Plaintiffs also appeared before Albany County Supreme Court Judge Michael Mackey.[1]  Defendant Justin Cocoran was a law clerk for Judge Mackey during the relevant time period.[2]  See Compl. at 3.  Plaintiffs also later had an appeal heard by the Appellate Division, Third Department, including Judge Eugene Devine. See id. at 8-9.

Plaintiffs contend that on or about April 11, 2018, they appeared along with Mr. Pine at a preliminary hearing before Judge Connolly.  See Compl. at 1.  Mr. Pine was supposed to engage in a settlement discussion, offering $995,000.  Id.  Mr. Pine told plaintiffs that Judge Connolly "only based the injury value at 100/200 thousand on the claim."  Id.  Defendants offered $55,000.  Id.  Mr. Pine also told plaintiffs that if they were to proceed to trial, Judge Connolly would reduce any award "based on his opinion of the value of the injury."  Id.  Ms. Delap "was not understanding" "how he [Judge Connolly] could do this given all my medical records state this is a serious brain injury." Id.  Plaintiffs argue that "April 11, 2018 was the start to fraud and many other criminal/illegal acts and abuse of authority against myself and my husband, Ronald."  Id.

At some point thereafter, it appears that Mr. Pine commenced an action against plaintiffs seeking payment for legal fees, which ultimately resulted in a lien being placed on their house. Compl. at 2.  Ms. Delap contends that this lawsuit caused her "confusion and upset' and she "did not understand why as he promised he would go to trial."  Id. The parties appeared for a conference before Judge Connolly – what plaintiffs refer to as a "show cause" hearing – on April 30, 2018, apparently relating to Mr. Pine's action

---

[1]  It is not entirely clear whether plaintiffs appeared before Judge Mackey for the medical malpractice issue or solely for the alleged nonpayment of fees dispute between plaintiffs and Mr. Pine or both.
[2]  Plaintiffs' complaint makes clear that Judge Corcoran was not a judge during the relevant time period, and their claims against him are in his capacity as a judicial law clerk.

against plaintiffs for fees.  Id.  Plaintiffs believed that the "show of cause" is what "[a]ttorneys do to try to get removed, file a lien on a claim, and force a settlement."  Id. During this conference, plaintiffs believe that Judge Connolly would not let Ms. Delap speak and only allowed her to respond with "yes/no" answers.  Id.  As this "Show Cause" hearing occurred two weeks before Mrs. Delap's medical malpractice and/or personal injury trial was to begin, Mr. Pine asked for an extension of the trial date, which Judge Connolly denied.  Id.  Ms. Delap contends that she "was not allowed anything that day" and she "feel[s] my rights were violated and I should have been able to speak and expand on the record as I have asked to in my opposition to Mr. Pine." Id. at 3. Plaintiffs contend that Mr. Pine was not prepared to proceed with trial. Id.  On April 30, 2018, after a hearing on a "show of cause" hearing, Ms. Delap visited an Urgent Care – where she met with a Physician Assistant – because she was "in shock . . . anxious," her head was hurting, and her blood pressure was elevated.  Id.

On May 10 or 11, 2018, plaintiffs had a conference before Judge Mackey, but the insurance company was not present at this conference.  See Compl. at 3.  Plaintiffs contend that they believe Mr. Pine "was a sham, previously worked at an insurance company near where he is from that closed for financial reasons," and that Mr. Pine "and his unnamed associate were all connected through this company."  Id.  At this conference, plaintiffs contend that they were told that Ms. Delap's medical records demonstrated that she was suicidal or homicidal.  See id. at 3.  Plaintiffs also stated that Mr. Pine threatened them at this conference, telling them that Ms. Delap would be "'restrained, arrested, and my claim would be dismissed.'"  Id. at 4.  Mr. Pine told Ms. Delap "how much of a screw up I had made," but Ms. Delap "had no idea what he was

talking about." Id.  Mr. Pine "bul[lied]" plaintiffs to "'accept an offer or else,'" leaving Ms. Delap "really scared, froze [sic] in fear."  Id.

Plaintiffs state that Judge Mackey told Ms. Delap that if she did not agree to a settlement "there would be consequences," and he pointed to papers on a table that plaintiffs were not given an opportunity to review.  Compl. at 4.  Plaintiffs contend that they were not shown any papers or given any details about a settlement and only knew "what Mr. Pine stated."  Id.  Mr. Corcoran, who was Judge Mackey's law clerk, told plaintiffs that they "had no options but to accept $150,000."  Id.  Plaintiffs state that Mr. Corcoran "knew about an apparently approved of what was being done to me, threatening us to make us sign a settlement agreement we/I did not want to sign."  Id.  Plaintiffs contend that this amounted to "blackmail[,] colluding[,] and coercion."  Id.  Mr. Corcoran and others told plaintiffs that "'people/juries would not take kindly to [Ms. Delap]; Albany is too conservative" and "there was much worse about how I could be arrested, restrained, dismissed, liens, wages garnished, and more (this went on for 10 hours May 11, 2019) (restrained, blackmail, and obstruction)."  Id.  After several hours of being at the courthouse and refusing the settlement many times, Ms. Delap "gave them a verbal to get home" because she "was exhausted and in pain, and I did not know what else to do."  Id. at 4.  Plaintiffs state that Mr. Delap informed Judge Mackey that "he had no agreement with Mr. Pine," and Ms. Delap stated that "Mr. Pine did not represent me, he was arguing against me."  Id.

Sometime after this conference, Ms. Delap spoke with her doctor who informed her that she did not have any medical notes referring to her as suicidal and homicidal. See Compl. at 4.  Plaintiffs state that Judge Mackey had a report stating that Ms. Delap

was suicidal or homicidal "in front of him and did not show me, did not pause and state we need medical clearance, nothing, I was treated like a criminal, not a victim of negligence." Id. at 5.  Sometime after this conference, Ms. Delap emailed Mr. Pine stating that "we were not accepting any offers but wanted to go to trial."  Id. at 4. Ms. Delap was "afraid of Mr. Pine," and plaintiffs "did not know what he was up to with the courts or Mr. Mattison, and then, the courts and Judges as well, we were and had them all coming after me (Mr. Pine, Mr. Mattison, and Judge Mackey were colluding and making up a document for August 7, 2018 that I never saw until June 2021.)."  Id.

> Plaintiffs also contend that a lien was placed on their home filed in 2016 from a Judge Devine who I filed complaints against . . . many for bias, etc.  As a result, I was discharged with prejudice for not having an attorney and there was no ruling that I know of regarding this bill, but it was attached to the claim, and it was never discussed except one time at the Appellate and the attorney did not know amount or have the bill.

Compl. at 5-6.  Plaintiffs contend that a lien "should never have been placed on our home," but Judge Devine "added it in and would not allow me to represent himself."  Id. Plaintiffs provide "we know the Firm behind this injustice, and we know how it all connects to my injury claim in 2016." Id. at 6.

Plaintiffs next reference an August 7, 2018, conference before Judge Mackey in his chambers.  See Compl. at 6.  Ms. Delap states that she thought that she would be able to explain a medical report that she had taken and tell Judge Mackey "how/what I was being threatened with," but Judge Mackey "was not going to hear me."  Id.  During this conference, Judge Mackey told Ms. Delap that she "agreed to this settlement (one I had not seen) and that even though I had requested another trial date his (Judge Mackey stated no) calendar was full as he said, and that was not going to happen." Id. Mrs. Delap contends that she "was set up by Judge Mackey, Mr. Pine, and Mr.

Mattison, and I believe Judge Corcoran former employee of O'Connor Firm who has Aspen on retainer, and he worked there for 16 years prior was involved, and Judge Connolly based on sealing the first show of cause against me 4/30/2018 and not allowing me to speak to dismiss Mr. Pine." Id. at 6.  Plaintiff contends that Mr. Corcoran "thought it was ethical, legal to sit there and tell me I had no options but to sign" a settlement agreement, despite his history with Aspen Dental. Id. at 6.

Plaintiffs again reference the alleged pressure they received regarding settlement.  See Compl. at 6.  Plaintiffs contend that "[v]icious threats went back and forth for several hours until late in the evening," when Ms. Delap was "told to sign the settlement." Id.  Ms. Delap states that she refused to sign a settlement has she "ha[d] no counsel . . . and I requested an attorney earlier that day, throughout the day, and Judge Mackey told me no, even I asked if I could take settlement and have an attorney look at it and Judge Mackey stated no." Id.   Ms. Delap contends that Mr. Delap was "threatened with wage garnishment, loss of employment, and a lien on our home." Id. Mrs. Delap's requests to have the settlement negotiations placed on the record were denied, which plaintiffs appear to argue was done to pressure Ms. Delap to sign a settlement agreement.  Id. at 6-7.  Plaintiff next contends that Justice Denise Hartman "ruled" on February 26, 2019, that the situation was "duress." Id.  Plaintiffs state that on this date, Judge Hartman "places an order of DURESS and overturns the stipulation with a total of five orders." Id. at 8.[3]

Plaintiffs next provide that "Appellate overturns Judge Hartman order in May of 2020." Compl. at 8.  Plaintiffs assert that "Appellate makes erroneous mistakes with

---

[3]  Plaintiff references an attachment of "Exhibit B" here, but no exhibits are attached to the complaint. See Compl. at 8.

biased Judge Devine." Id.  Plaintiffs appear to contend that the Court of Appeals, State

of New York, "has this as a motion to be heard" but that "it appears they are unsure of

jurisdiction." Id.  The Court of Appeals

> accepted a motion I filed, but I really think that they are just trying to figure
> out an excuse to cover Judge Mackey, and Judge Mackey recused
> himself after this forced signing of the settlement and refuses to explain
> why there was no record and refuses to accent an intent for this claim/suit
> I am trying to now file with Federal Court.

Id.

Plaintiffs next argue that Mr. Pine's attorney David Cabaniss argued before the

Court of Appeals that certain documents apparently related to an August 7, 2018,

"Show of Cause" should "not be allowed or show to the Chief Justice Janet DiFiore."

Compl. at 10.  Plaintiffs argue that "[t]his is profoundly disturbing and unacceptable in a

court of Law, where a person is to be protected by the law, absolutely no one is above

criminal acts of the law." Id.

Plaintiffs appears to seek to sue defendant Caitlin Insurance Company because

"knows it is illegal to accept a forced settlement and not on any record, and we are

trying to explain this to the NYS Insurance company who does not understand the law, it

has been a nightmare, so much fraud." Compl. at 7.  Plaintiffs contend that "the

insurance company is supposed to take part in settlement discussions as they did on

April 11, 2018, but none after this date." Id.  Plaintiffs also appear to state that they seek

to sue the Aspen defendants because they were "fully aware of what was going on" and

they "took part, as it was anything to keep settlement low and my brain injury out of

this[.]" Id.

Ms. Delap opines, "[w]hat was done to me was a violation of LAW and my CIVIL RIGHTS."  Compl. at 9.  Ms. Delap contends that "no one should ever be tortured by all the fear, threats, blackmail/extortion[,] and berating, bullying, obstructing justice and abusing their authority in the way that was done to me."  Id.  "All I asked for was a trial, I told them and tried to tell them many times Mr. Pine did not represent me."  Id.  Plaintiffs argue that they "were blackmailed and had no choice at 7:45PM in the evening after the Courthouse had closed, no official court records at all, were forced to sign or loose [sic] everything."  Id.

## C.  Analysis

As a threshold matter, the undersigned observes that plaintiffs fail to comply with Rule 8 of the Federal Rules of Civil Procedure as the complaint does not present numbered paragraphs with a single fact/thought limited to each paragraph.  Further, as plaintiff's complaint is a difficult to follow series of events, plaintiffs also fail to meet the requirements of Rule 10, which direct that a complaint must contain a short and plain statement of the claim demonstrating that the plaintiff(s) is entitled to relief. Significantly, plaintiffs' complaint appears largely barred by the Rooker-Feldman doctrine.  To the extent that claims remain that may not be barred by the Rooker-Feldman doctrine, the remaining claims do not suffice to establish this Court's jurisdiction.  The undersigned explains its reasoning below.

Plaintiffs seek this Court to review the decisions and actions of state courts. Plaintiffs do not include with their complaint any copies of any of judicial decisions, but reference a decision from Justice Denise Hartman, Albany County Supreme Court, that

may or may not have determined that plaintiffs entered into the settlement agreement under duress.  See Compl. at 8. It is unclear from plaintiffs' complaint whether Judge Hartman vacated the settlement.  Plaintiffs contend that Justice Hartman's decision was appealed to the Appellate Division, Third Department, who overturned Justice Hartman's decision.  See id.  Although plaintiffs did not provide copies of these Supreme Court or Appellate Division decision, this Court's Westlaw search revealed that in a decision dated June 19, 2020, the Appellate Division, Third Department, Delap v. Serseloudi, 184 A.D. 992, 125 N.Y.S. 3d 189 (NY App Div 3d Dep't June 18, 2020, reversed a lower court decision of Justice Hartman which had vacated the medical malpractice settlement.  Plaintiffs contend that Judge Devine was "biased" and that the Appellate Division "makes erroneous mistakes."  Id.  Plaintiffs state that the Court of Appeals "appears unsure of jurisdiction."  Id.  A Westlaw search further reveals that on March 30, 2021, the Court of Appeals, State of New York, dismissed plaintiffs' motion for leave to appeal "upon the ground that the order sought to be appealed from does not finally determine the action within the meaning of the Constitution." Delap v. Serseloudi, et al., 36 N.Y.3d 1080 (N.Y. 2021).

To the extent plaintiffs seek review of the dismissal of their motion for leave to appeal, the Appellate Division's reversal of Albany County Supreme Court's decision, or this Court to address the same issues that were before these state courts, this Court lacks the ability to perform such review under the Rooker-Feldman doctrine.  The Rooker-Feldman doctrine recognizes that, except for the Supreme Court of the United States, federal courts may not exercise appellate jurisdiction over state court judgments. See McKithen v. Brown, 481 F.3d 89, 96 (2d Cir. 2007).  Under the Rooker-Feldman

doctrine, a district court lacks jurisdiction to consider a plaintiff's claim when "[1] the plaintiff lost in state court[;] [2] the plaintiff . . . complain[s] of injuries caused by a state-court judgment, [3] the plaintiff . . . invite[s] district court review and rejection of that judgment[;] [and 4] the state-court judgment [was] rendered before the district court proceeding commenced." McKithen, 626 F.3d at 154 (citation and additional alterations omitted). "The Rooker-Feldman doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, a role which Congress has reserved to [the Supreme Court]." Verizon Md. Inc. v. Public Svc. Comm'n of Md., 535 U.S. 635, 644 n.3 (2002).  Therefore, district courts do not have jurisdiction to hear cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). "A plaintiff may not overcome the doctrine and seek a reversal of a state court judgment simply by casting his complaint in the form of a civil rights action." Rabinowitz v. New York., 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (internal quotation marks and citation omitted). The Rooker-Feldman doctrine "may be raised at any time by either party or sua sponte by the court." Moccio v. N.Y.S. Office of Court Admin., 95 F.3d 195, 198 (2d Cir. 1996) (citations omitted), abrogated on other grounds by Exxon Mobil Corp., 544 U.S. at 283.

Thus, to the extent plaintiffs seek to bring this action for alleged violations of their civil rights with respect to an allegedly coerced settlement agreement and/or the reversal of the vacating of that settlement agreement, such claims must be dismissed

with prejudice due to the <u>Rooker-Feldman</u> doctrine.  <u>See</u> <u>Rabinowitz</u>, 329 F. Supp. 2d at 376. As explained above, plaintiffs appear to challenge the Appellate Division decision overturning Judge Hartman's vacating of the settlement and/or the Court of Appeals' decision to deny leave to appeal, and potentially seek consideration of the same issues that were before those Courts.  This Court lacks jurisdiction to perform such review for the reasons discussed above.

It appears that two of plaintiffs' apparent claims would not be barred by the <u>Rooker-Feldman</u> doctrine[4]: (1) apparent allegations of judicial misconduct against defendants Judge Mackey, Judge Devine, and Judge Connolly; and (2) legal malpractice against defendant Pine.  <u>See</u> generally Compl.  However, for the reasons that follow, the undersigned determines that these claims also cannot proceed.

Federal courts are courts of limited jurisdiction and may not preside over cases absent subject matter jurisdiction. <u>See</u> <u>Exxon Mobil Corp. v. Allapattah Services, Inc.</u>, 545 U.S. 546, 552 (2005).  Federal jurisdiction is only available when a "federal question" is presented, 28 U.S.C. § 1331, or the plaintiff and all defendants are of diverse citizenship and the amount in controversy exceeds $ 75,000.  <u>See</u> 28 U.S.C. § 1332. When a court lacks subject matter jurisdiction, dismissal is mandatory.  <u>See</u> <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 514 (2006). Therefore, although courts "construe a pro se litigant's complaint liberally, a plaintiff attempting to bring a case in federal court must still comply with the relevant rules of procedural and substantive law, including establishing that the court has subject matter jurisdiction over the action." <u>Ally v. Sukkar</u>, 128 F. App'x 194, 195 (2d Cir. 2005) (summary order) (internal citation omitted).

---

[4]  It does not appear that these issues were before the state courts for review.  <u>See</u> <u>generally</u> Compl.; <u>Delap v. Serseloudi</u>, 184 A.D. 992, 125 N.Y.S. 3d 189 (NY App. Div .3d Dep't June 18, 2020).

Thus, plaintiffs must be able to demonstrate either diversity jurisdiction or federal question jurisdiction.  Plaintiffs have not demonstrated diversity jurisdiction because they cannot demonstrate that they are citizens of a different state than all defendants. Indeed, plaintiffs provide that they are citizens of New York State, and several defendants are citizens of New York State as well.  To show diversity jurisdiction, plaintiffs must demonstrate they are citizens of a different states from all of the defendants. Thus, if any defendant is also a "citizen" of New York, there is not complete diversity jurisdiction. See Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 68 (2d Cir. 1990); see also Herrick Co., Inc. v. SCS Communs., Inc., 251 F.3d 315, 322 (2d Cir. 2001) (finding it axiomatic that "diversity jurisdiction is available only when all adverse parties to a litigation are completely diverse in their citizenships")).  As plaintiffs cannot demonstrate complete diversity jurisdiction, to proceed, plaintiffs must establish federal question jurisdiction.

To invoke federal question jurisdiction, the plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Stated another way, "[f]ederal question jurisdiction may properly be invoked only if the plaintiff's complaint necessarily draws into question the interpretation or application of federal law." New York v. White, 528 F.2d 336, 338 (2d Cir. 1975).

The only claims not barred by the Rooker-Feldman doctrine are plaintiffs' complaints of judicial misconduct and legal malpractice, and these claims do not involve questions of federal law.  Indeed, legal malpractice is a state law claim.  See, e.g., Ramoz v. Zucker, No. 14-CV-5694 (SLT) (RER), 2014 WL 5363778, at *2 (E.D.N.Y. Oct. 20, 2014).  The only possible basis for this Court's subject matter jurisdiction over

plaintiff's legal malpractice claim would d be supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  However, "[t]he district court may decline to exercise supplemental jurisdiction over a claim . . . [i]f the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); Spiegel v. Schulmann, 604 F.3d 72, 78 (2d Cir. 2010).  As the undersigned concluded that it does not have subject matter jurisdiction, the undersigned finds that declining supplemental jurisdiction over plaintiffs' state law legal malpractice claim is proper.  Moreover, although the undersigned declines to exercise supplemental jurisdiction reach plaintiffs' legal malpractice claim, the undersigned also observes that under New York State law, there is a three-year statute of limitations for legal malpractice, which "begins to run on "the day an actionable injury occurs,' regardless of when a plaintiff discovers the injury." Caldwell v. Barrier, 1:19-CV-1516 (BKS/CFH), 2020 WL 918717, at *4 (N.D.N.Y. Feb. 26, 2020) (internal citation omitted); N.Y. CPLR § 214.  Plaintiffs' complaint appears to allege that Mr. Pine's alleged legal malpractice occurred in April and May 2018, when plaintiffs allege that they were coerced into signing a settlement agreement and otherwise mistreated.  See Compl. at 1-4.  However, plaintiffs purported to commence this action on July 28, 2021, which is more than three years after the "actionable injury" occurred. Caldwell, 2020 WL 918717, at *4.  Thus, based on the information in plaintiffs' complaint, any potential state law legal malpractice claims may be barred by the New York State's statute of limitations.[5]  Accordingly, as the Court does not have jurisdiction

---

[5] The undersigned notes, though, that the undersigned declines to reach the merits of plaintiffs' apparent legal malpractice claim and makes no comment as to whether plaintiffs' claims would be likely to be able to proceed if they were brought in an appropriate state court forum.

to review plaintiffs' claims for legal malpractice, it is recommended that this claim be dismissed with prejudice.

Further, plaintiffs' apparent judicial misconduct claims against Judges Connolly, Mackey, and Devine are barred by judicial immunity.  It is well settled law that judges have immunity from suit for acts performed in their judicial capacities.  See Mireles v. Waco, 502 U.S. 9 (1991) (per curiam).  Judicial immunity is immunity from suit, not just immunity from the assessment of damages. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences."  Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004). Generally. the only scenarios wherein judicial immunity does not apply is for (1) "non-judicial actions, i.e., actions not taken in a judge's judicial capacity[,]" or (2) when a judge's actions are "judicial in nature" but "taken in the complete absence of all jurisdiction."  Mireles, 502 U.S. at 11 (1991). The Supreme Court has "generally concluded that acts arising out of, or related to, individual cases before the judge are judicial in nature." Bliven v. Hunt, 579 F.3d 204, 210 (2d Cir. 2009). Judges enjoy absolute immunity even when a plaintiff offers allegations of "bad faith or malice" or "corruption." Mireles, 502 U.S. at 11; Imbler v. Pachtman, 424 U.S. 409, 419 n.12 (1976).  A judge cannot "be deprived of immunity because the action he took was in error . . . or was in excess of authority."  Mirales, 502 U.S. at 13 (quoting Stump v. Sparkman, 435 U.S. 349, 356 (1978)).

The allegations in plaintiffs' complaint demonstrate that the claims against Judges Connolly, Mackey, and Devine were related to matters that were before them, were judicial in nature, and were within their jurisdiction. See generally Compl. Thus,

regardless of plaintiffs' apparent claims of bad faith or malice on the part of defendants Connolly, Mackey, and Devine, these claims are barred by judicial immunity.  See Mireles, 502 U.S. at 11.

Insofar as plaintiffs raise similar claims against defendant Corcoran, who served as Judge Mackey's judicial law clerk, Mr. Corcoran is also entitled to judicial immunity. Although Mr. Corcoran was not a judge during the time period in question, "judicial immunity can extend to non-judges 'who perform functions closely associated with the judicial process.'"  Haydu v. U.S. Federal Government, 3:12-CV-1424 (MAD/DEP), 2013 WL 665066, at *42 (N.D.N.Y. Jan. 29, 2013) (quoting Cleavinger v. Saxner, 474 U.S. 193, 200 (1983)).  "[F]or the purposes of judicial immunity, judges and their law clerks are as one.'"  Oliva v. Heller, 839 F.2d 37, 40 (2d Cir. 1988) (internal citation omitted); see also Bliven v. Hunt, 418 F. Supp. 2d 135, 138 (noting that judicial immunity "covers court clerks and law clerks with respect to discretionary acts that implement judicial decisions or that are performed at the direction or under the supervision of a judge.") (E.D.N.Y. 2005) (citing Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997)).  As plaintiffs' complaint suggests that Mr. Corcoran assisted with the settlement proceedings, he was performing duties related to the adjudicative process.  Therefore, judicial immunity applies to Mr. Corcoran's alleged actions as well.  Id.  Thus, it is recommended that, insofar as plaintiffs' complaint could be interpreted as raising claims for misconduct against Mr. Corcoran in his role of law clerk, such claims be dismissed with prejudice as barred by judicial immunity.

"[W]hen addressing a pro se complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any

indication that a valid claim might be stated." Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (internal quotation marks and citation omitted). However, the Court is not required to grant leave to amend when doing so would be futile. See Cuoco v. Mortisugu, 222 F.3d 99, 112 (2d Cir. 2000). Here, "[t]he problem with [plaintiff's] causes of action is substantive [and] better pleading will not cure it"; therefore, any attempt to amend would be futile. Id. Accordingly, it is recommended that plaintiffs' complaint be dismissed in its entirety with prejudice, without opportunity to amend.

### III.  Motion to Appoint Counsel

Plaintiffs' application for appointment of counsel provides that they have contacted several law firms, along with "law school, and "all bar associations," but that the small law firms "needed 25,000 thousand or more and lge [sic] firms were to [sic] politically connected and feare [sic] reprecutions [sic] to firms and future clients."  Dkt. No. 3.  Plaintiffs provide that they should be appointed counsel because "poor person status" and because none of the attorneys or firms would represent them because "they would have to go up against Judges in Albany County Supreme Court and it would hurt their business/firm & clients future." Id.  Further, plaintiffs contend that to retain an attorney, "it would be a very large amount up front of close to 100 grand which I do not have."  Id.

Prior to evaluating a request for appointment of counsel, a party must demonstrate that he is unable to obtain counsel through the private sector or public interest firms.  See Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 173-74 (2d Cir. 1989) (citing Hodge, 802 F.2d at 61).  Courts cannot utilize a bright-line test in determining

whether counsel should be appointed on behalf of an indigent party.  See Hendricks v. Coughlin, 114 F.3d 390, 392-93 (2d Cir. 1997).  In Terminate Control Corp. v. Horowitz, the Second Circuit reiterated the factors that a court must consider in ruling upon a motion seeking assignment of counsel:

> [T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination

28 F.3d 1335, 1341 (2d Cir. 1994) (quoting Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986).  Of these criteria, the Second Circuit has emphasized the importance of assessing "whether the indigent's position was likely of substance."  Cooper v. A. Sargente & Co., Inc., 877 F.2d 170, 172 (2d Cir. 1989).  Thus, appointments of counsel are not to be granted "indiscriminately."  Id.  Although 28 U.S.C. § 1915(e)(1) authorizes the court "to request an attorney to represent any person unable to afford counsel," a civil litigant has no constitutional right to the assistance of counsel.  Berrios v. New York City Housing Auth., 564 F.3d 130, 135 (2d Cir. 2009).

Plaintiffs do not provide proof that they contacted the listed attorneys, firms, or organizations, despite the form affirming that they "[a]ttached to this motion the correspondence I have received from the attorneys listed above."  Dkt. No. 3 at 1.  However, even assuming plaintiffs met their requirement of demonstrating the efforts they made to obtain counsel on their own, dismissal of the motion for appointment of counsel is appropriate for several reasons.  First, the undersigned recommends that this case be dismissed without prejudice and without opportunity to amend.  Thus, the

undersigned has concluded that plaintiffs' complaint, in this context, is not "likely to be of substance." Cooper, 877 F.2d at 172. Should the district judge agree, no counsel would be required as the case will not proceed.

Second, plaintiffs have failed to meet other requirements of demonstrating that appointment of counsel is necessary and appropriate in this action. Plaintiffs' action has just been commenced and all that has been provided is the complaint, which is supported solely by plaintiffs' own allegations. "Where a plaintiff does not provide a Court with evidence, as opposed to mere allegations, relating to [his or] her claims against the defendant(s), [he or] she does not meet the first requirement imposed by the Second Circuit relative to application seeking appointment of counsel." Harmon v. Runyon, No. 96-CV-6080, 1997 WL 118379, at *1 (S.D.N.Y. Mar. 17, 1997).

Further, even if the district judge disagrees with this Report-Recommendation and permits the case to proceed, a different result on this motion for appointment of counsel would not be required. The fact that plaintiffs are proceeding pro se, are inexperienced in legal matters, and that defendants – if this case were to proceed -- would likely be represented by counsel, does not require this Court to appoint plaintiffs counsel. Were that the case, counsel would need to be appointed to nearly every pro se plaintiff in civil actions.

In addition, plaintiffs' financial inability to hire an attorney also does not require the appointment of counsel in a civil case. Appointment of counsel in civil cases is a privilege which is justified only by exceptional circumstances, not a right accorded to any plaintiff who would be better equipped or would feel more comfortable with legal representation. See, e.g., Brown v. Enzyme Dev. Div. of Biddle Sawyer Corp., 780 F.

Supp. 1025, 1026 (S.D.N.Y. 1992). Lack of knowledge of the law does not suffice to demonstrate that appointment of counsel would increase the likelihood of a just determination in this case. See Ballard v. United States, 11 Civ. 7162 (JSR)(RLE), 2012 WL 3765022, at *1 (S.D.N.Y. Aug. 30, 2012) (denying appointment of counsel and stating that, "other than his general comment that he is 'completely unfamiliar with law,' the plaintiff "has not demonstrated any marked difficulties in presenting his case and fails to state why appointment of counsel would increase the likelihood of a just determination in this case.").

### IV. Conclusion

Wherefore, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiffs' motion for leave to proceed in forma pauperis (dkt. no. 2) is **GRANTED** for purposes of filing only; and it is

**ORDERED**, that plaintiffs' motion to appoint counsel (dkt. no. 3) is **DENIED**, and it is

**RECOMMENDED**, that plaintiffs' complaint (dkt. no. 1) be **DISMISSED with prejudice and without opportunity to amend**.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. See Roldan v. Racette, 984

F.2d 85, 89 (2d Cir. 1993) (citing <u>Small v. Sec'y of Health and Human Servs.</u>, 892 F.2d

15, 16 (2d Cir. 1989)); <u>see</u> <u>also</u> 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[6]

      Dated: September 15, 2021
         Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[6] If you are proceeding <u>pro se</u> and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. <u>See</u> FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. <u>See id.</u> § 6(a)(1)(c).